## HULL v. McCALL *et al.*

1. ABSOLUTE DEED: MORTGAGE: CONSTRUCTION OF DEED. Where M. entered lands in his own name, with the money and for the use of H, and afterward conveyed the same to H., by a deed which was never recorded; and H., mortgaged the same to a third party who assigned the mortgage to M., who afterwards acquired possession of the unrecorded deed and destroyed it: *Held*, that M., was a mortgagee merely and could divest H. of his title only by foreclosure.

2. SAME: TIME ESSENCE OF CONTRACT. The general rule as to forfeiture of contracts for the conveyance of real estate, when time is made the essence of the same, does not apply to contracts for reconveyance of property conveyed by an absolute deed to secure the payment of a debt.

*Appeal from Boone District Court.*

MONDAY, JUNE 23.

THE facts are stated in the opinion of the court.

*J. M. Ellwood* for the appellant.

The bill should be dismissed, for want of equity. The allegations do not show any contract to return the deed, nor any fraud on the part of McCall, in obtaining possession of the same. The complainant without any contract from McCall to return the deed, or any fraud in obtaining it, delivers the same voluntarily to said McCall. He expressly avers that he did so without knowing what was to be done with it. The voluntary action of the plaintiff, in parting with his deed under such circumstances, to his grantor without consideration, when the same had not been recorded, can not be made a ground of equitable relief; certainly the plaintiff stands in no better position, than a party making a voluntary agreement. In such case, equity will not interfere, but will leave the parties where it finds them. 2 Story Eq. Jur., § 706; *Norris* v. *Slaughter*, 3 G. Greene, 116; *Cravens* v. *Cravens*, Mor., 285; *Holland et*

*ux.* v. *Hensley et al.,* 4 Iowa, 222; *Minturn* v. *Seymour,* 4 John. Ch., 497. The redelivery of the deed by plaintiff to McCall did not operate to divest the title of the plaintiff to the land. *Jackson* v. *Anderson,* 4 Wend., 474; *Jackson* v. *Page,* Id., 585; *Raynor* v. *Wilson,* 6 Hill, 469; *Nicholson* v. *Hulsey,* 1 John. Ch., 417. McCall acquired no title to the land by the surrender of the deed to him; and having no title, he could not be decreed to convey one. *Campbell* v. *Ayres,* 6 Iowa, 339.

The bill may be dismissed upon the final hearing in this court, for want of equity; *Kriechbaum* v. *Bridges et al.,* 1 Iowa, 14; *Cowles et al.* v. *Shaw,* 2 Id., 496; *Pierson* v. *David et al.,* 4 Id., 410; *Moore* v. *Pierson,* 5 Id., 279.

The plaintiff is only entitled to relief upon the allegations contained in his bill, and if the evidence even shows him entitled to relief, he cannot avail himself of it, unless the facts out of which the equity arises, are set up in his bill. *Crumbaugh* v. *Smock,* 1 Blackf., 305; 1 Barb. Ch. Pr., 339; *Walker* v. *Ayres,* 1 Iowa, 449; *Singleton* v. *Scott,* 11 Id., 589.

The time of the payment being of the essence of the contract, as alleged in the answer, and shown by the evidence of William Pilcher, the failure of the plaintiff to repay to McCall the money at the time stipulated, operated to vest the title to the land in McCall, and he was at liberty to convey it at discretion. *Usher* v. *Livermore,* 2 Iowa, 117; *Davis* v. *Stevens,* 3 Id., 158.

Even conceding, however, that time was not of the essence of the contract, still the title passed to McCall, and the bill for a reconveyance of the land, or for removing a cloud upon the title, could not be entertained, or a decree rendered thereon, unless the plaintiff before filing his bill, paid, or offered to pay to McCall the amount paid by him to McFarland upon the mortgage, under the agreement, with the legal interest thereon. The party seeking the aid

of equity must first do equity. 2 Story Eq. Jur., § 707; *Wells* v. *Smith*, 7 Paige's Ch., 22; *Stringham* v. *Brown*, 7 Iowa, 33; *Sloan* v. *Coolbaugh*, 10 Iowa, 31.

*John A. Hull* for the appellee. No argument on file.

Lowe, J.—A proceeding in chancery, to quiet and confirm the plaintiff's title to a certain tract of land, therein described. The land in controversy was entered in the fall of 1853, from the general government, by the defendant, Samuel B. McCall, with the funds and for the use of the plaintiff, who at the time and ever since has occupied and improved the same as his own. The certificate of purchase was taken in McCall's name, but he soon thereafter conveyed the land by deed of conveyance to the plaintiff, who did not have the same recorded. About that time the plaintiff was indebted to the defendant, McFarland in the sum of $97.50 by note, and gave a mortgage on the same land to secure the payment thereof at four months, or the 1st of March, 1854. A little later, this note and mortgage were paid, and taken up by McCall, who became the owner of the claim as against the plaintiff, who, without having it recorded, placed the deed which he had received from McCall for the land in dispute, back into his own hands.

McCall destroys this deed, and subsequently, in 1857, conveys the same land by deed to the defendant, McFarland.

Thus far the facts as stated are not in controversy, but are admitted. The point of divergence in the statements and allegations of the parties, relate to the circumstances and conditions upon which the deed in question had been returned by plaintiff, to the defendant, McCall.

The plaintiff alleges that McCall had obtained possession of said deed from him under some pretext that it was necessary for the protection of his (the plaintiff's) rights, that having confidence in the friendship, intelligence, and good

intentions of McCall, and supposing that he wanted the deed for some legitimate purpose, handed the same back to him, but not for the purpose, or with the expectation, that the same would be canceled or destroyed. Yet that the said McCall had taken advantage of the confidence which he reposed in him, as well as his ignorance of the real object which he, the said defendant, had in procuring the deed from him, and has since retained the deed and not only refused to restore, but had finally destroyed it.

On the other hand McCall claims, in his answer, that the deed had been given back to him, under a special contract, entered into between himself and the plaintiff, to the effect, in substance, that if he, said McCall, would pay to said McFarland, the amount of said note and mortgage aforesaid, that he, plaintiff, would re-deliver to said McCall the said deed, (the same never having been recorded,) and would pay to the said McCall the amount paid by him to McFarland, on said mortgage, on or before its maturity on March 1st, 1854; and that it was agreed that time should be the essence of the contract, and if the said plaintiff should fail to pay the same to said McCall, at the time agreed on, then the land in said deed described, should become the property of the said McCall, and the title thereto should vest absolutely in him. The defendant, McCall, further claims that under this contract he paid off the McFarland mortgage, that he has not been reimbursed for this advancement by the plaintiff, that he destroyed the deed of conveyance which he had received from the plaintiff under the circumstances stated, and subsequently, to wit, in September, 1857, he conveyed the land as his own to the defendant, McFarland.

Assuming the facts to be just as McCall states them, what were his legal relations to the plaintiff? Simply that of a creditor, holding in his hands two securities for the payment of his claim, one, the assigned mortgage of

McFarland against the plaintiff, the other, the plaintiff's title deed to the land in dispute. Suppose default in the payment of the debt at the time specified did occur, was it competent for McCall to destroy this security, and in that way reinvest himself with the title? This is a method of transfer not known to the law. The title he admits was in the plaintiff by deed regularly executed and delivered; we suppose he could only repossess himself again of the title by a voluntary conveyance from the plaintiff, or by a decree of the court, or by a judicial sale. The doctrine in regard to time being the essence of the contract, does not apply to mortgages or title deeds which take the place of mortgages, for under the laws of this State the legal title remains in the mortgagor, of which, although a forfeiture takes place, he cannot be divested, except by a voluntary conveyance, or by sale under a foreclosure.

It is unnecessary, however, to press this point, as the evidence in this case does not sustain the allegation, that time was the essence of the special contract set up in the defendant's answer. The only evidence that bears upon this feature of the contract is to be found in the deposition of the witness Pilcher, the substance of which is as follows:—

"McCall was to pay off the McFarland mortgage, and Hull, the plaintiff, was to pay McCall the amount of the mortgage at a certain time, six, nine, or twelve months, and if he failed to do so, McCall was to have the land," or, "he was to use his own pleasure in keeping it." This comes quite short of proving the allegation. See *Matthews* v. *Gilliss*, 1 Iowa, 242. It is claimed, however, that the defendants' answer being called for under oath, proves it, being equal to the testimony of one witness; the reply to this, however, is that this part of the defendant's answer was not responsive to the bill, but that it is new matter,

which is denied in the replication, and therefore cannot have that effect.

Besides all this, there is considerable other evidence showing that the defendant, McCall, recognized the plaintiff as the owner of this land, long after the time when the same should have been forfeited under the contract.

The plaintiff claims in his petition that he had paid McCall the amount of money which he had advanced to McFarland on the mortgage. This is denied, and alleged, on the other hand, that the money which the plaintiff paid had been applied on his store account, and upon this feature of the case a large amount of evidence was introduced, and made to figure extensively in the cause; but, as we view the matter, it has no necessary connection with the case. The question is, whether, if he had not paid the money, the defendant, McCall, was justified in destroying his title deed, usurping absolute dominion and ownership over his property, and even conveying it away to a third person.

There can be but one answer to this question, and the court below did not err in decreeing that the deed of conveyance from McCall to McFarland for the land in controversy should be set aside and canceled, and that McCall should restore or make to plaintiff another deed of conveyance for the same land, leaving the parties to adjust amicably or by suit their respective money claims against each other.

The decree entered in this case, therefore, will be

Affirmed.